In re BELLANCA AIRCRAFT
CORPORATION, Debtor.

Edward W. BERGQUIST, Trustee of
the Bankrupt Estate of Bellanca
Aircraft Corporation, Plaintiff,

v.

ANDERSON–GREENWOOD AVIATION
CORPORATION, and Anderson–Green-
wood & Company, Defendants.

Bankruptcy No. 4–81–959.
Adv. No. 4–81–323.

United States Bankruptcy Court,
D. Minnesota,
Fourth Division.

Feb. 22, 1989.

Jan Stuurmans and Brian Todd, for Edward W. Bergquist, of counsel: Stuurmans & Karan, P.A., Minneapolis, Minn.

Jerry W. Snider, for Anderson–Greenwood & Co., of counsel: Faegre & Benson, Minneapolis, Minn.

John R. Stoebner and Richard T. Thomson, for Anderson–Greenwood & Co., of counsel: Lapp, Laurie, Libra, Abramson & Thomson, Chartered, Minneapolis, Minn.

## MEMORANDUM ORDER REGARDING AVOIDING DEBTOR'S TRANSFER OF THE PROCEEDS FROM THE SALE OF THE B–129, B–130 AND B–138 AIRCRAFT TO ANDERSON–GREENWOOD & COMPANY

MARGARET A. MAHONEY,
Bankruptcy Judge.

This decision arises out of a prior decision by me found at *In re Bellanca Aircraft Corp.*, 56 B.R. 339 (Bankr.D.Minn. 1985). The Eighth Circuit remanded the matter to me for further findings to determine whether the proceeds received by Bellanca as payment for the sale of three aircraft owned by AGCO were property of the debtor within the meaning of the Bankruptcy Code. *In re Bellanca Aircraft Corp., (Bergquist v. Anderson–Greenwood Aviation Corp.)*, 850 F.2d 1275, 1279 (8th Cir.1988). I have jurisdiction to hear this matter under 28 U.S.C. § 1334(b); 28 U.S. C. § 157(a) and the Order of Reference of the District Court. This is a core proceeding under 28 U.S.C. § 157(b)(2)(F).

### FACTUAL AND PROCEDURAL BACKGROUND

The facts surrounding the relationship and the transactions occurring between Bellanca Aircraft Corporation, the debtor in this matter (Bellanca) and Anderson–Greenwood & Company (AGCO) are detailed in *In re Bellanca Aircraft Corp.*, 56 B.R. 339, and in the Joint Partial Stipulation of Fact between the parties dated December 27, 1988. The facts central to the issue under consideration here begin evolving in 1979 when Bellanca, after continuing to experience financial difficulties, entered into an agreement with AGCO whereby AGCO would purchase a number of aircraft from Bellanca. The agreement called for Bellanca to continue in its efforts to sell the planes to third parties. Three of the aircraft, designated as B–129, B–130 and B–138, were subsequently sold. The B–129 was sold February 20, 1980, to Grane Aviation for $69,675; the B–130 was sold January 24, 1980, to Great Lakes Aviation for $69,528.60; and the B–138 was sold March 5, 1980, to South Raleigh Aviation for $71,775.40. The third party purchasers each made payments to Bellanca who deposited the sales proceeds into its general corporate checking account and in turn forwarded the proceeds to AGCO.

Bellanca subsequently filed a Chapter 11 proceeding and the trustee filed a complaint seeking to avoid certain preferential and postpetition transfers from Bellanca to AGCO and other creditors and to equitably subordinate AGCO's claims against the estate. After a lengthy trial, it was determined that sixteen of the aircraft transactions including the transactions involving the B–129, B–130 and the B–138 were not preferential and AGCO was denied equitable subordination of its claims. The District Court, Diana E. Murphy, J. affirmed. On appeal to the Court of Appeals, Lay, J., affirmed in part and remanded to the District Court with directions to remand to the bankruptcy court for further findings.

### DISCUSSION

The trustee of the bankrupt estate maintains that the proceeds of the three aircraft sales described above were the property of Bellanca and as such when Bellanca subsequently transferred the proceeds to AGCO, the transfer was preferential under 11 U.S.C. § 547(b)[1] and could

---

1. Section 547(b) provides: Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;
(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

be avoided by the trustee. AGCO argues that Bellanca acted as AGCO's agent in selling the aircraft, that the proceeds therefore rightfully belonged to AGCO and were subject to a constructive trust in favor of AGCO.

Each of the elements of Section 547(b) must be proved by the trustee in order to avoid a transfer alleged to be preferential including the element that the debtor had an interest in the property transferred.

1. Transfer of an interest of the debtor in property

■ —A preferential transfer must involve a transfer of property in which the debtor has an interest. 4 *Collier on Bankruptcy* § 547.03[2] (15th ed. 1979). To avoid the transfer, it must be shown that the transfer deprived the debtor's estate of something of value which could have been used to satisfy claims of the creditors. *In re Newcomb, (Carlson v. Farmers Home Admin.)*, 744 F.2d 621, 626 (8th Cir.1984); and *See Brown v. First Nat'l Bank of Little Rock*, 748 F.2d 490 (8th Cir.1984); 4 *Collier on Bankruptcy* § 547.03[2] (15th ed. 1979).

Bellanca was ultimately successful in selling the three AGCO-owned aircraft to third parties. The funds received in payment of the sales were transmitted to Bellanca who deposited the funds in its general corporate account. These deposited funds became the property of Bellanca since it had legally unrestricted use of the funds and the funds were commingled with other funds. *In re Dick Henley, Inc., (La-Rose v. Bourg Ins. Agency)*, 45 B.R. 693, 697 (Bankr.M.D.La.1985). "[A]ny funds under the control of the debtor, regardless of the source, are properly deemed to be the debtor's property, and transfers that diminish that property are subject to avoid-

ance." *In re Chase & Sanborn Corp., (Nordberg v. Sanchez)*, 813 F.2d 1177, 1181 (11th Cir.1987).

No evidence was presented that AGCO instructed Bellanca to segregate these deposits or placed any legal restrictions on the proceeds. Although no evidence was presented that Bellanca had wrongfully deposited the sale proceeds in its account, AGCO now maintains Bellanca acted wrongfully in making these deposits. The three aircraft were sold at different times between January and March 1980, and for each separate sale, Bellanca followed the same procedure of depositing the funds in its account. From this it is clear that AGCO consented to Bellanca's conduct. When Bellanca subsequently transferred the proceeds to AGCO, it transferred property in which it had an interest. The funds had been deposited in Bellanca's corporate account and were subject to the claims of Bellanca's creditors. No third party inspecting the debtor's bank accounts would have known that some of the monies were ultimately to be paid to AGCO.

AGCO argues that the proceeds were never the debtor's property in that (1) the proceeds from the sales of the three AGCO-owned aircraft were the property of AGCO, not Bellanca; (2) Bellanca held only legal title and no equitable title in the proceeds; and, (3) Bellanca was acting as AGCO's agent and as such had no equitable interest in sale proceeds of its principal and equity would impress a constructive trust on the proceeds.

The events taking place after the sales transactions do not support AGCO's claim that the proceeds were property of AGCO. The sale proceeds were transmitted to Bellanca and Bellanca deposited the funds in its general corporate account before trans-

(3) made while the debtor was insolvent;
(4) made—
  (a) on or within 90 days before the date of the filing of the petition; or
  (b) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if—

  (A) the case were a case under Chapter 7 of this title;
  (B) the transfer had not been made; and
  (C) such creditor received payment of such debt to the extent provided by the provisions of this title.
(West 1988)

ferring them to AGCO. In fact, the proceeds received from the sale of the B–130 were deposited by Bellanca January 24, 1980, but were not remitted to AGCO until April 21, 1980.

AGCO's contention that Bellanca possessed legal title and no equitable title is also without merit. The Eighth Circuit held that Section 547(b) "property of the debtor" as used in defining a voidable preference is equivalent to Section 541(a)(1) "property of the estate." *In re Bellanca Aircraft Corp.*, 850 F.2d 1275, 1279, n. 8. Consequently, AGCO argues that under Section 541(d), property in which the debtor has only legal title becomes property of the estate only to the extent of the debtor's legal title. AGCO's argument misses the point. Bellanca had more than legal title to funds deposited in and subsequently withdrawn from its checking account. The funds were not restricted, segregated or escrowed to show any evidence of non-ownership but were in fact treated as funds received by Bellanca. The funds in the general account paid many creditors, and, upon commingling, it could not be determined what money was specifically AGCO's.

AGCO enforces its argument that Bellanca had no equitable interest in the proceeds by contending that Bellanca acted as AGCO's agent in the sale of the aircraft and as such, was under a duty to convey the sale proceeds to AGCO, its principal. No evidence was presented substantiating the existence of an agency relationship at the time of the transfer. The evidence presented was that Bellanca would continue to attempt to market the AGCO-owned aircraft and any proceeds resulting from sale of the aircraft to third parties would be returned to AGCO as reimbursement of funds previously delivered to Bellanca. *In re Bellanca Aircraft Corp.*, 56 B.R. 339 at 375. Invoices to the third party purchasers were submitted by Bellanca; the sale proceeds were sent to Bellanca; and Bellanca issued an F.A.A. Bill of Sale reflecting the sale of each of the aircraft from Bellanca to a third party. These facts do not mandate finding the existence of an agency

relationship but rather support a basic debtor-creditor relationship.

AGCO's insistence on impressing the proceeds with a constructive trust to shield the sale proceeds from property in which the debtor has an interest must also fail. As both parties contend, the constructive trust is an equitable remedy employed to prevent unjust enrichment. Minnesota law supports the imposition of constructive trust if legal title to property is obtained by fraud, by taking advantage of a fiduciary or confidential relationship or in an unconscientious manner such that retaining the property would result in unjust enrichment. *In re Investment Sales Diversified, (Beutel v. Joanis )*, .38 B.R. 446, 450 (Bankr.D.Minn. 1984). "A court of equity, in decreeing a constructive trust, is bound by no unyielding formula, but is free to effect justice according to the equities peculiar to each transaction wherever a failure to perform a duty to convey would result in unjust enrichment." *Knox v. Knox*, 222 Minn. 477, 25 N.W.2d 225 (1946). This is not a sufficiently unjust enrichment to justify imposition of a constructive trust.

AGCO claims that the case at bar is exactly like *In re Martin Fein & Co., (Varon v. Salomon )*, 43 B.R. 623 (Bankr.S. D.N.Y.1984). Factually, *Varon* and the case at bar are clearly distinguishable. In *Varon*, the court said it had previously ruled in a companion case, *In re Martin Fein & Co., Inc., (Dolph Clothiers, Inc. v. Salomon )*, 34 B.R. 333 (Bankr.S.D.N.Y. 1983), that a trust relationship between an auctioneer debtor and the principal for whom he had conducted sales was imposed as a matter of law and that agency relationship required the impression of a constructive trust. Here a debtor-creditor relationship existed between Bellanca and AGCO. Bellanca and AGCO agreed AGCO would be repaid upon the ultimate sale of the aircraft and when Bellanca received the proceeds, it became indebted to AGCO. Impressing a constructive trust under these facts would provide creditors in future bankruptcies a tool to avoid preferences and severely undermine the protection of the Code for all creditors. Every creditor expects to be repaid. AGCO im-

posed no special requirements on Bellanca such as a trust account or joint signatures on checks. Therefore, AGCO is no different than any other unsecured creditor.

**2. To or for the benefit of a creditor**

■ In my earlier opinion, I found that specific transfers of property of Bellanca to AGCO including twenty finished aircraft; checks in the amount of $600,000, $100,000 and $150,000; reimbursements to AGCO for its payment of Bellanca's creditors; AGCO's installment payments of an address-o-graph machine; and other miscellaneous reimbursements on behalf of Bellanca were to or for the benefit of AGCO, a creditor of Bellanca. Although the transfer of the sale proceeds was not included in those transfers originally considered by the court, I determined AGCO was a creditor of Bellanca. For purposes of the transfer of the sale proceeds, I find AGCO was a creditor of Bellanca as well.

**3. For or on account of an antecedent debt owed by the debtor before such transfer was made**

■ Evidence was presented at trial that it was the intent of Bellanca and AGCO in the financing agreement that upon the ultimate sale by Bellanca of the AGCO-owned aircraft, Bellanca was obligated to transfer the proceeds to AGCO. Once Bellanca was in receipt of the sale proceeds, it owed a debt to AGCO in the amount of the proceeds. This debt was incurred at the time Bellanca deposited the funds in its account and was therefore incurred before Bellanca transferred the proceeds. The transfer of the proceeds was for an antecedent debt owed by Bellanca to AGCO.

**4. The remaining three of the five conditions under 11 U.S.C. § 547(b)**

Bellanca's insolvency, the one-year preference period and the receipt by AGCO of more than it would have received in a Chapter 7 liquidation were established in the original trial and do not need to be considered here.

Therefore, the sale proceeds transferred to AGCO were property in which Bellanca had an interest, and the transfer fell within the five elements of § 547(b) and can therefore be avoided by the trustee.

IT IS ORDERED that Anderson–Greenwood & Company shall pay to Edward W. Bergquist, trustee of the bankrupt estate of Bellanca Aircraft Corporation, the sum of Two Hundred Ten Thousand Three Hundred Forty-four and no/100 Dollars ($210,-344) together with costs and disbursements herein.

IT IS SO ORDERED.

## JUDGMENT

ORDERED that Anderson–Greenwood & Company pay to Edward W. Bergquist, trustee of the bankrupt estate of Bellanca Aircraft Corporation, the sum of Two Hundred Ten Thousand Three Hundred Forty-four and no/100 Dollars ($210,344) together with costs and disbursements herein.